Good morning, and may it please the Court, my name is Eric Miller and I represent the appellants. I'd like to reserve three minutes for rebuttal, please. The question in this case is whether certain dinosaur fossils are minerals under Montana law. The answer to that question is yes, and this Court should say so without certifying the question to the Court. They've articulated a test for determining what is a mineral, and the application of that test to the undisputed facts here resolves this case. Hold on one second, counsel. Our clock is not running here. Lucky you. Okay. Lucky me. Thank you, Your Honor. In understanding the test that the Montana Court has set out, I think it's helpful to think about three different categories of materials. You can think of them on a Venn diagram as concentric circles defining progressively narrower subsets. So the broadest possible category is anything that you might find on or under the ground. So gold, sand and gravel, potatoes, whatever. Inside of that is a second narrower category that is materials that fall within the scientific or technical definition of a mineral. And then inside of that is a narrower still third category, which is materials that are within the legal definition of a mineral. Now there's no question in this case that the fossils at issue are within at least that second category, materials that fall within the scientific and technical definition of the word mineral. That wasn't disputed below. It's most clearly laid out at page 290 of the excerpts of record where plaintiff's expert was asked in his portions of one of the fossils, the Murray T-Rex, that are mineral. And his answer was that the skeleton is mineral. It's hydroxylapatite. Now there's some question among the experts as to which mineral it is. Is it hydroxylapatite or francolite or fluorapatite? But as the district court acknowledged, everyone agrees. Let me, because I think I understand your argument. So let me just ask you about your position here. You are asking the court basically to extrapolate from Farley and its Heinitz, I think is the other case, this two-part, very simple test that looks only to mineral composition and then the rare and exceptional character of the substance. But I don't see anywhere in Farley the court saying that intends to establish a two-part test to be used in all future cases. In fact, it seems to me that Farley seems to go out of its way to limit its holding to the scoria at issue there. And look at Heinitz, and I don't see a two-part test there either, which expressly in Heinitz considered, the court there considered multiple factors, including, if I have it right, the evidence as to the nature of this substance, its relation to the surface land, its use and value, and the method and effect of its removal. In addition, it seems like both these cases are, at the end of the day, contract cases, just like this one, which seek to basically discern the ordinary and natural meaning of the terms used by the parties, including the term mineral. So in light of that, and I know that's a lot, but can you please point me to the or anything referenced there that supports this two-part test? I mean, there's certainly nothing specific, I think you'll agree. Well, I agree you will not find the language. We are establishing a two-part test, but I think perhaps the best way to see how the Montana courts have treated the test established by Farley is the Hart case, which followed Farley. And Hart is significant, not just because it's a second case, but it's significant because there you had a new kind of material not previously considered. Hart was sandstone used for construction and riprap. And what the court did in Hart, it's a fairly short opinion, they didn't say, you know, we're going to conduct our own inquiry into ordinary meaning. They didn't look at dictionaries or statutory definitions. They applied Farley. So I think the best reading of Hart is that it is a recognition by the Montana Supreme Court that the question of what is a mineral is analyzed by applying the sort of analysis that was used in Farley. And then that's what they did in Hart. And they said, we're going to look at whether this material, which there as here was concededly within the scientific and technical definition of minerals, we're going to look at whether that their language is rare and exceptional in character, or if they possess a peculiar property, giving them special value. So that is the test. And the virtue of applying it that way, of course, is that this is a question of property law, contract law, and it's important that property rights be clear. And it's important to have a clear test so that when parties write a deed, as is fairly common, without specifically thinking about particular materials, they write a deed that just says minerals, that they are referring to an established body of law. But it seems like, I mean, you reference Hart, but, you know, Farley and Heintz also, what was at issue there were building materials. And so, at least from my read, it seems to be a well-established exception for substances that are used for building roadways or construction. So I just, I want to know, how does the reasoning supporting that exception apply to fossils? Seems like dinosaur fossils are not used for building. So isn't this case dissimilar from those cases? Dinosaur fossils, of course, are not used for building. But the reason that the building material, or the use in building, was mentioned in those cases was not because the court was saying, you know, there's a special rule for building materials. The court was talking about the use of the material because it goes to whether they have special value or what their character is. And one way that we can see that is in Farley itself, ultimately quoting Heintz. But the Farley court quoted the language that said, sand is not a mineral. But if you had a special kind of sand that you could make glass from, that would be a mineral. And similarly, limestone is not, ordinary limestone is not a mineral. But if you had a special high quality limestone that was suitable for making cement, that would qualify as a mineral. And so what's significant about that analysis is, you know, making glass is not, it's not a building material, but it shows that, you know, ordinary sort of low value uses like riprap, like Rhodes, don't qualify something as a mineral. Because if they did, you know, that stuff is everywhere and you could remove the whole soil. That's a focus on the rare and exceptional. I mean, it seems like that would encompass a lot of substances that may not traditionally be thought to be mineral or of a mineral state. What would happen, I guess, with archeological artifact minerals, such as clay pots or bones, human bones or other animal bones, or I don't know, there's just all kinds of things that may come up in this area, maybe asteroids, those each be examined just based on that two-part test? Well, I think you have a couple of examples there. Some of them are pretty easy because clay pots would not fall within the scientific and technical definition of minerals because those require that it be a naturally occurring substance. So something man-made, like an artifact that you might find at an archeological site, would not be a mineral. Similarly, gold that naturally occurs in the ground as a mineral, but gold coins that somebody had buried would not be, that would be a man-made object. But with respect to naturally occurring materials that are, these are inorganic materials. The experts agreed on that. I mean, you can pick it up, the fossil that is, and it looks and feels like a big rock because it basically is a big rock. And the question is, how is this rock different from a block of sandstone or a block of limestone? And the answer is that if you find a block of limestone, if it's ordinary limestone that you just do sort of use as ordinary material, that's not a mineral. But if it's a special block of limestone that has some special value, Hart and Farley tell us that that would be a mineral. And that's basically what a dinosaur fossil is. It's a big rock that has special value because of its scientific and aesthetic and commercial value. Well, I'm going on my grade book, my grade school knowledge of fossils, but it seems like there's two kinds. One is the fossil that's imprinted on a rock or the imprint of the animal or the structure of the bone on the rock. And the other is the actual, like what was found here, it seems like were the fossilized bones of the dinosaurs. Is that right? Yeah. So what's at issue here is the fossilized bones of a dinosaur. And what the experts said, including plaintiff's experts and the district court acknowledged is there's no evidence of organic material. This is not soft tissue. It's hard mineralized bone. And it is something that is a mineral in that sense. And it is a mineral in the legal sense because it's not an ordinary rock. It's a mineral substance that has special value. But even that, it seems like fossils have a wide range of value. Do they not? Yes. I mean, just as different types of limestone have different types of value. Some are valuable, some are not. Are you saying limestone, do you examine it like you would? I mean, you would have to hear in terms of each specimen to be evaluated on a case-by-case basis. Is that what would happen then? That's what Farley says at page 380 of 890p2. They're quoting from Holland, quoting from Heinatz. And they say you have to look at the particular characteristics of what's at issue in the case. And you mentioned that artifacts are man-made, but wouldn't that be another factor that the court would have to consider, which isn't part of the two-part test? No, that goes to whether it's within the ordinary scientific or technical definition of a mineral because that definition encompasses only naturally occurring. Now, is rare and exceptional a fact issue or a matter of law? I think it is a factual question, but here it is not a disputed fact. There was testimony, I mean, one of these fossils has sold for several million dollars. So ordinarily in a case in Montana, a jury would be asked to determine whether or not this was rare and exceptional? That is correct, just as I think you would have to determine what's the intended use, excuse me, of the building stone or the sand. I think it is fair to say, though, that in any case where it was actually being litigated, you would probably be able to have pretty good evidence that it had some value based on the fact that... Now, Hart was summary judgment, right? I believe that's correct, and that's because, I mean, but the court, there was no, the only question or the only evidence of use there was everybody agreed that it was being used as ordinary riprap. And the court said as a matter of law, that's a sufficiently low value use, that it doesn't qualify. If I could reserve the remainder of my time, please. Thank you, counsel. We'll hear from your opponent. Good morning. May I please the court? Harlan Krogh on behalf of Lige and Mary Ann Murray. I know that the court has a number of questions they'd like to ask, but I'd first, I'll address the certification issue because I think that's on the top of your mind. This may be a case that is appropriate for certification, although neither party has asked for that. We certainly recognize the court's discretion and authority to make that determination sui splante, but only under the circumstances of asking a pure legal question for the Montana Supreme Court to determine. And so if the court is inclined to do so, I think that a purely legal question, something like, does a dinosaur fossil fit within the ordinary and natural meaning of minerals in the context of a mineral estate or a mineral deed, would be an appropriate question. That tilts it in your favor because I think your opposition doesn't agree with that definition, does it? Well, that certainly is the test, and I think that's the ordinary natural meaning is the test that this court or Montana Supreme Court is going to use and ultimately find whether a prehistoric dinosaur skeleton fossil is going to be considered a in terms of reserving mineral estate. Is that the test that used in Farley, ordinary and natural meaning? Yes. I think Farley was the one that identified that. It certainly is relying upon Heinen's as well. Judge Waters utilized that test, and I think that it's important for us to back up in terms of how to apply the test. Let me ask you a question. The question before us is whether Farley provided guidance, whether the Montana Supreme Court provided guidance so we could decide the next case, or was it limited to a scoria material, and then when another mineral came along, you would look at definitions, etc. That happened first. They get a chance to do that. They get a chance to do that in Hart. What do they say in Farley? Then they conclude, for whatever reasons, that is rare and exceptional. It seems to me a lot of the arguments here are that Farley was wrongly decided, that we ought to have some other method of determining this question, but it is what it is. Doesn't Hart then nails it down? Well, it certainly follows Farley, and I think what we can gather from Farley is not necessarily whether it was scoria or limestone or gravel or anything that we commonly think might fit within that mineral definition, but it's to look at the ordinary and natural meaning, not the scientific meaning. I think what Farley is trying to say is we don't want the court to become a chemistry lab. We don't want you to have to determine what components and what chemicals actually fit in a ordinary and natural meaning. How do you come with that? With respect, the way I read Farley is they maybe started out with that concept, but they realized that there was no such thing. You had different regulations, different laws that define mineral in different contexts. They concluded that when they analyzed the law of Wyoming and Texas and Oklahoma and I forget what all else, that they had certain things that seemed to be in common. They then incorporated those things into their definition, but seemingly recognizing that in each case you may have a necessity for some fact finding because minerals are not just a generic homogeneous substance. Can you address for me your contention that Farley requires or that the law of Montana requires that we consider things in a, let me look at my word I'm looking for here, categorical analysis. In other words, we have to analyze these things by category. I think that's an important part of the rare and exceptional because when we look at minerals in the ordinary and natural definition of it, a handful of this mineral is the same as the handful of this mineral. It has no uniqueness to it. A handful of gold dust, another handful of gold dust. Coal, coal, it's all the same. But when we come to dinosaur fossils, they're unique in its nature. That's why the appellant's not logical. It's because we have thousands if not countless parts of dinosaur fossils that can be found or are found. They're valueless. Only the ones that are in a particular form, in a particular species, in a particular completeness, and that's what Judge Waters found is that it's because of the uniqueness of the condition that it's found in that makes it valuable. Let me ask you this. As I understand it, Farley, relying on the Texas case, the Heinitz case, rejected this categorical analysis. If that's right, wouldn't the two-part test in Farley be adequate to decide this case? In other words, hasn't the Montana Supreme Court given us the prongs of analysis necessary to decide this case? I think that they have. I think that in Farley and in Craig, they've given you two examples of what some people might commonly think of are materials or substances that fit a mineral. Scoria looks like a mineral to the common person. Gravel, sandstone, those kinds of objects are typically thought to be mineral type because they have minerals in them. What we've learned from those two cases is that is not the complete analysis. Just because we have mineral-based compositions, it has to still be rare and exceptional. It has to be as a group. I beg to differ with you that Farley chose not to have that as a group. I thought that they relied on Heinitz to say that was the case. I think what that has to say is there may be considerations where a particular common substance can have a unique situation, but I don't think that was the holding of it. I think what it has to say is this component, this substance has to be always rare and always valuable. It can't be just picked out of a group of other things that are not. We have in the record juncosaurs or leverite. That means leverite there. That means they are bone fragments that have no value, no usefulness at all. But in this particular case, counsel, I know you can pick out isolated examples of where categorical analysis would be helpful, but in this case you've got these really valuable dinosaur bones. Yes. I gather you don't dispute it's currently made up of minerals and that it's rare and unusual. These particular ones are. Yeah, you're right. So what's the problem? The problem is... Doesn't that answer the question? No, it doesn't. Because what we're trying to figure out is what was the intent of the parties when they had a contract on this deed reservation? What did they intend to mean? What if they had no intent or it's unassertainable? And that's where we're at. And that's why we have to look to the common, the ordinary, the natural meaning of how Montana interprets this. Do we interpret it as a mineral that's excavated in a mining operation? No, absolutely not. We identify these as remains of a living organism that once roamed this earth. And that's how we differentiate between certain labels. Does it have mineral components to it? We all have mineral components to lots of different things. Organic compounds appear everywhere, but they're not considered minerals in the terms of a mineral deed. You just made a reference again, and you did so in your briefs regarding, and I want to make sure I understand, whether substances and mineral must be resolved categorically. Yes. You say yes? Yes, I think so. Yes. Doesn't that, it seems like that might undermine your argument that there are substances that are minerals in one instance, but not in another. Because we have that in some instances, that sand, you know, is such quality, it's a mineral, but when it's used for making glass, but when it's used for construction, it's not. So maybe I didn't make myself clear. I apologize. I think there are certain substances that have minerals in it. That doesn't make them a mineral in terms of the broad definition of a deed. Doesn't, in a mineral estate, there's a difference between that. And that's why the rare and exceptional is important as a category. Because those particular items, like sand, gravel, limestone, which initially would have mineral components and mineral characteristics, are not, are not, as a group, rare and exceptional. Categorical applies to the second step of the analysis. In other words, that they can, that dinosaur fossils may all be minerals. However, they must be rare and exceptional. Yeah, and they must be rare and exceptional throughout that category. So in that sense, it's non-categorical, because you have a category, and then you exempt out those which are rare and exceptional. All coal is the same. All copper, all ore is the same. It's the same in its content, and it's the same in its value. Here we're taking a selected four pieces out of thousands of fragments and saying, as a category, these are minerals. Well, the next ones that you pick up off the ground are not. And so I don't think that that is a valid way of applying the analysis. The rare and exceptional assists the court, assists the court in making that initial determination of what a mineral is, based upon the ordinary natural definition. It's not a separate one, but it helps the court to define and to reach that ultimate conclusion, whether this case, in terms of the category, that's why it's so difficult to only concentrate our analysis on particular items, but it has to be on whether this would be ordinary. Going into a ninth grade science class and saying to the class... With respect, counsel, how could these dinosaur bones, under any Well, it's not that they're ordinary. It's the ordinary and natural meaning of minerals. That's what it is. I understand, but we're talking about these specific fossils. That's what this litigation is all about. They're not ordinary in the sense that they're unusual. Natural, sure, they're naturally found, but it doesn't really help us. It meets your definition, but then you have to go further, and don't we get back then to Farley and Hart, which add onto that. It's got to be a mineral as understood, and that's your ordinary and natural, and then you've got the rare and exceptional, and you've got that here, don't you? No, you don't. I beg to differ, Your Honor, respectfully, but it's not that the item is ordinary. It's does the item fit the ordinary and natural meaning of minerals, and we know in Montana law, we make distinctions. We make distinctions in our statutes. We make distinctions because we separate minerals from prehistoric and Paleozoic. But, counsel, isn't that the very thing that drove Farley? They just said, this term is not clear under our law. We've got different meanings of minerals, depending on the type of minerals you've got. I think they cited two different statutes or regulations, so they said, we've got to figure out a different way to do this. Then that's where they went to, is it a mineral in a scientific sense, and then is it rare and unusual? I think that's why you can't rely on one or another type of statutory or other reference, but what Judge Waters did is she took a wide variety of resources. She took dictionary references. She took statutory references. She tried to apply Farley, and in all those cases, it was similar. Those types of things which were common were the basis of her finding. One was, the definition of minerals generally is a homogeneous, hard rock substance that is mined commercially in a way that does not fit the fossil definition. She recognized that the fossils are unique in their nature because of their completeness, because of the way that they are found, because of their species. It is not typical of a mineral. Let me ask you this. My understanding of coal is basically it's primarily made up of dinosaurs. They've been there for millions and millions of years. Are you saying that coal basically can never be a mineral? Is that what you're saying? No, I'm saying that, first of all, the idea that that concept, we don't know that for sure because we know that we have found other minerals. I studied geology. You did too, and that's what they taught us, right? Were they lying to us? But we can't explain why we found minerals and other mineral deposits on other planets, other moons, because we believe that there's no life there, and there was never any life there, and so these mineral deposits may have been created by other things. Like aliens or something? No, well, we don't know. It's a chemical compound that we don't know what created that formation, but you're right. This is a skeleton. This is a fossil. I know that there was a Louisiana case, the appellant site, about clams. We don't have clams in Montana. We don't have a Gulf Coast. We don't have things, but we have rainbow trout, and if you find a fossilized rainbow trout on the bed of a Gallatin River, nobody believes that's a mineral. They believe it's a fossil. They believe it's a... With that happy illusion, I have to stop you because you are over time, but we do think Montana has wonderful trout. We congratulate you on that. Thank you. We can be in agreement with that? Indeed, we can. Thank you. Your opponent has a little bit of rebuttal time. Thank you, counsel. Thank you, your honor. On the question of whether you look at the particular characteristics of the particular substance at issue, that is answered not only by the language about sand and limestone that I quoted earlier from Farley, but it's also answered by the statement of the holdings in both Farley and Hart. In Farley, talking about scoria, the court says, such substances, when they are useful only for building and road-making purposes, are not regarded as minerals. Similarly, in Hart, the court said, the sandstone at issue in this case is not exceptionally rare and valuable. In both of those cases, the court was looking at the particular... Hart laid out the... Give me one second. We got to start the clock again here. She really likes you. Thank you. Don't we need to follow... Hart stands for the methodology that you use. That is, if Farley laid out the test, Hart applies it, and the next one that comes along, we know what to do. That's exactly right, Your Honor. Farley represented an effort by the Montana Supreme Court to articulate how to determine the ordinary and natural meaning of the word mineral, but they determined that in Farley. Henceforth, courts don't need to undertake their own inquiry or look at dictionaries or statutes or anything else. They can just apply it. That's what they did in Hart, and that is what we are asking the court to do here. If there are no further questions... All right. Thank you very much. Thanks to both counsel for your arguments. We appreciate it. The case just argued is submitted, and the court stands adjourned for the day.
judges: M. Smith, Murguia, Robreno